IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PERDUE HOLDINGS, INC.,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-14-1007** |
| **BRF S.A.,** | * | |
| **Defendant** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM**

Perdue Holdings, Inc. ("Plaintiff") brought this suit against BRF S.A. ("Defendant") for alleged breach of contract.  Now pending before the Court is Defendant's motion to dismiss for lack of personal jurisdiction (ECF No. 28), and Plaintiff's motion requesting a hearing on this issue, (ECF No. 34).  The issues have been briefed (ECF Nos. 28, 32, 33), and no hearing is required, Local Rule 105.6.  For the reasons explained below, Defendant's motion to dismiss is GRANTED.

### I.     BACKGROUND[1]

Plaintiff is a wholly-owned subsidiary of an international food producer, headquartered in Maryland.  (ECF No. 32 at 9.)  Defendant is an international food company and exporter of poultry meats (*id.*), headquartered in Brazil, (ECF No. 29 at 8).  To sell their respective poultry products, Plaintiff uses the mark "PERDUE," and Defendant uses the mark "PERDIX."  (ECF No. 32 at 7.)

---

[1] The Court here recounts the facts as alleged by the Plaintiff, the non-moving party.  *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

In 2002, Plaintiff became concerned that consumers might confuse the competing marks. (*Id.* at 10.)  This concern prompted negotiations between the parties, which culminated in the formation of their "2003 Worldwide Coexistence Agreement" and a later 2005 addendum, collectively referred to as "the Agreement." (*Id.*)  The Agreement includes promises by both parties not to use and/or register their respective marks in competing territories.  Plaintiff agreed not to use and/or register its mark in Brazil, and Defendant agreed not to use and/or register its mark anywhere else in the world.  (*Id.* at 11.)  The Agreement selects Maryland law in its choice-of-law provision (*id.*), but does not contain a forum selection clause, (*id.* at 18).  Plaintiff executed the Agreement from Maryland (*id.* at 10), and Defendant executed the Agreement from Brazil (ECF No. 29 at 16).

Plaintiff filed its Complaint against Defendant on April 1, 2014, alleging that Defendant breached the Agreement by pursuing applications for trademark registrations in Argentina, Morocco, Sao Tome & Principe, and Uruguay.[2]  (ECF No. 1 at 5.)  Plaintiff also alleges that Defendant breached by refusing to abandon trademark registrations in Canada, China, Hong Kong, Kuwait, Lebanon, Argentina, Bolivia, Paraguay, and Uruguay.  (*Id.*)  Defendant filed this motion to dismiss for lack of personal jurisdiction on July 19, 2014.  (ECF No. 28.)

## II.    LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) is a test of the court's personal jurisdiction over the defendant.  "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of

---

[2] The Complaint also alleges that Defendant had pursued trademark registration in the United States, but abandoned these efforts prior to this litigation.  (ECF No. 1 at 5.)  The Court recognizes that, even if Defendant maintained its application for trademark registration in the United States, Maryland would still not be the proper forum to hear these claims.  The Patent and Trademark Office is not in Maryland.

a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin.*

*Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

### III.    ANALYSIS

Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction.  "A

federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an

applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is

consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 911 F.2d 1195, 1199

(4th Cir. 1993).  Maryland courts have consistently held that Maryland's long arm statute "is

coextensive with the limits of personal jurisdiction set by the due process clause of the Federal

Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1 (Md. 2005).

For that reason, the "statutory inquiry merges with [the] constitutional examination." *Id.*

Plaintiff does not allege, and the Court does not find, "continuous and systemic" contacts

with the forum state sufficient to justify general jurisdiction over Defendant.  *See Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Instead, the Court assesses

whether it has specific jurisdiction over Defendant in relation to the particular claims in this case.

The Fourth Circuit applies a three-part test for evaluating whether the assertion of

specific jurisdiction is consistent with constitutional due process: the court must consider "(1) the

extent to which the defendant purposefully availed itself of the privilege of conducting activities

in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State;

and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Plaintiff fails to make its requisite *prima facie* showing.  It alleges several contacts between Defendant and the forum state, but taken individually or together these do not present a sufficient jurisdictional basis for the Court to adjudicate Plaintiff's claims.

First, Plaintiff argues that the Agreement is a Maryland contract because Plaintiff is a Maryland corporation.  The Court, however, "accords special weight to the fact" that Plaintiff initiated the contractual relationship that eventually gave rise to this dispute.  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009); *see also Diamond Healthcare of Ohio, Inc., v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000) (dismissing claims for lack of personal jurisdiction in part because the plaintiff initiated the contractual relationship).  By its own admission, *Plaintiff contacted Defendant* to negotiate the Agreement.  (ECF No. 32 at 10.)  Plaintiff's residence in the forum state is insufficient to show purposeful availment by Defendant, since Defendant did not affirmatively seek a legal relationship with the Maryland corporation.  Thus, this argument fails on the first prong of the requisite *Consulting Engineers* analysis.

Second, Plaintiff argues that Defendant owes "continuing obligations" to Plaintiff because Defendant is still bound by the Agreement.  (ECF No. 32 at 19-20.)  Plaintiff relies on cases where specific jurisdiction was proper because a defendant had a "substantial and continuing relationship" with "continuing obligations" owed to a plaintiff in the forum state.  (*Id.* at 16.)  These cases are readily distinguished.  Each involves a defendant's long-term, "continuing and wide-reaching contacts" with the forum state, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-80 (1985), "reporting and payment obligations" to a Plaintiff in the forum state, *Choice Hotels Int'l., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 621 (D. Md. 1998), or solicitations of business in the forum state, *see Peanut Corp. of Am. v. Hollywood*

*Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).  Here, according to Plaintiff's recounting of the facts, the Agreement essentially ensured the absence of continued business between the litigants. (ECF No. 32 at 11.)  Plaintiff does not allege that it made continuous contacts with Defendant during the term of the eleven-year Agreement, does not allege that Defendant had reporting or payment obligations to Plaintiff,[3] and does not allege that Defendant solicited business in the forum state.  Defendant's obligation to refrain from business activities in the forum state is insufficient to show purposeful availment by Defendant, and this argument also fails on the first prong of the requisite *Consulting Engineers* analysis.

Third, Plaintiff argues that Defendant's alleged breach of the Agreement is causing injury at its corporate headquarters in Maryland.  (*Id.* at 21.)  Harmful effects are relevant in a specific jurisdiction analysis under the "Effects Test."  *See Consulting Engineers*, 561 F.3d at 280 (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 n.7 (4th Cir. 2003)).  However, there is no authority in the Fourth Circuit to suggest that the Effects Test applies to anything other than intentional tort claims, and the Court is not prepared to now extend the test's reach to claims for breach of contract.[4]  *See id.* (limiting the test's reach to claims where "defendant committed an intentional tort" and where "the defendant expressly aimed his tortious conduct at the forum").  Therefore, the Court does not consider the financial harm that Plaintiff experiences in its analysis of personal jurisdiction in this claim for breach of contract.

---

[3] The Court recognizes that *Plaintiff* had payment obligations to Defendant during the past two years, as discussed *infra* at 6-7.  This fact, however, is irrelevant to our analysis.  Plaintiff's payment obligations merely establish a contact with Defendant's headquarters in Brazil.  Further, Plaintiff's claims do not arise out of these payment obligations, and thus fail on the second prong of the requisite *Consulting Engineers* analysis.  Moreover, even if the Court considered Plaintiff's obligations to be a relevant contact with Maryland, these sporadic payments over the past two years are demonstrably not "continuous" when compared to the facts in *Choice Hotels*.  *Choice Hotels*, 23 F. Supp. 2d at 619 (finding continuous payment obligations where the defendant made monthly payments to the plaintiff for seven consecutive years).

[4] The Ninth Circuit has expressly bifurcated its analysis of purposeful availment into tort and contract cases, and only applies the Effects Test in tort cases.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Fourth, Plaintiff relies on the party's decision to include a Maryland choice-of-law provision in the Agreement.  (ECF No. 32 at 18.)  This "is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that." *Consulting Engineers*, 561 F.3d at 281 (citing *Burger King*, 471 U.S. at 481-82).  In *Consulting Engineers*, the Fourth Circuit dismissed a plaintiff's claims for lack of personal jurisdiction even though the disputed contract included a choice-of-law provision selecting the forum state's laws. *Id.* at 281.  The Court of Appeals explained that, unlike valid forum selection clauses which may waive objections to personal jurisdiction,[5] a choice-of-law provision is not dispositive on this issue. *Id.* at 281 & n.11.  A defendant who includes a choice-of-law provision has not yet availed itself of the protection of that chosen law.  It has simply promised that future conflicts will be resolved in accordance with that law.  When a party invokes a choice-of-law provision, there then may be a contact so sufficient as to confer personal jurisdiction.  But here, without Defendant having invoked it, the provision's mere presence in the contract is insufficient to constitute "purposeful availment" and the first prong of the requisite *Consulting Engineers* analysis is not satisfied.  Without more than the presence of the choice-of-law provision in the Agreement, Plaintiff has failed to assert sufficient facts to support its assertion that the Court has jurisdiction over Defendant.

Finally, Plaintiff alleges that Defendant made contact with the forum state when it sent invoices to Plaintiff's headquarters in Maryland.  (ECF No. 32 at 21.)  Apparently, Plaintiff has intermittently ordered approximately 715,000 pounds of poultry from Defendant in the last two years, to be shipped to Tanzania. (*Id.* at 13, 21; ECF No. 32-2.)  Plaintiff has paid over $600,000

---

[5] Plaintiff notes that if Defendant had wanted to avoid litigation in Maryland, it could have included a forum selection clause in the disputed contract.  (ECF No. 32 at 18.)  While undoubtedly correct, it is *Plaintiff's*, not Defendant's, burden to make a *prima facie* showing that the Court may assert personal jurisdiction.  Furthermore, Plaintiff similarly could have included a forum selection clause selecting Maryland if it had hoped to ensure this forum's jurisdictional basis.

out of its Maryland headquarters for these orders. (ECF No. 32 at 21.) These purchase orders and invoices, however, have no connection with the instant contractual dispute. Thus, this argument fails on the second prong of the requisite *Consulting Engineers* analysis because Plaintiff's claims do not arise out of these unrelated shipment activities.

Plaintiff's allegations fail to satisfy its *prima facie* burden to show that the Court has a sufficient jurisdictional basis. Beyond Plaintiff's failing to make this showing, the Court finds that it lacks specific jurisdiction for three additional reasons: (1) the contract was not negotiated or formed in Maryland; (2) the Agreement amounts to a promise that Defendant will refrain from business activities in Maryland; and (3) the alleged breach took place outside of Maryland.

The disputed contract *is not* a Maryland contract. To be sure, Plaintiff is definitively headquartered in Maryland. Plaintiff's Complaint and subsequent briefings, however, show that negotiations and contract formation were not anchored to a specific forum. Instead, Plaintiff negotiated and formed the contract from Maryland (*Id.* at 10), and Defendant negotiated and formed the contract from Brazil, (ECF No. 29 at 16). Further, Defendant has not purposefully availed itself of the privileges of conducting activities in Maryland. In fact, by its express terms, the Agreement limits Defendant's ability to participate in certain business activities in the entire United States, to say nothing of Maryland. (ECF No. 32 at 11.) Finally, any activities giving rise to Plaintiff's claims all took place outside of Maryland. According to Plaintiff's own Complaint, this case is about Defendant's pursuit of new, and refusal to abandon old, international trademark registrations. (ECF No. 1 at 5.)

The Court recognizes that there are factors under the third prong of the *Consulting Engineers* analysis that weigh in favor of asserting personal jurisdiction. There is no doubt that Plaintiff's attempt to pursue international litigation in a variety of forums will be cumbersome.

That said, Plaintiff's inconvenience alone does not justify the Court's assertion of personal jurisdiction. Plaintiff has failed to make a proper *prima facie* showing under at least the first prong of the requisite personal jurisdiction analysis. The first prong of this test "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail [it]self of the privilege of conducting business under the laws of the forum state." *Consulting Engineers*, 561 F.3d at 278. Without these minimum contacts, the Court need not wade into a deeper analysis of the second or third prongs. In sum, the contacts pled by Plaintiff are insufficient under the due process clause as interpreted by *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945), and its progeny.

**CONCLUSION**

Accordingly, an order shall issue GRANTING Defendant's motion to dismiss for lack of personal jurisdiction. (ECF No. 28.)

DATED this 19th day of September, 2014.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge